# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **JASON SPRINGER,** | ) | **CASE NO.1:15CV00020** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **CLEVELAND CLINIC EMPLOYEE** | ) | **OPINION AND ORDER** |
| **HEALTH PLAN TOTAL CARE,** | ) | |
| | ) | |
| Defendant. | ) | |

## CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Plaintiff's Complaint seeking to reverse the decision of Defendant Cleveland Clinic Employee Health Plan Total Care denying Plaintiff employee health benefits in violation of the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1002 . For the following reasons, the Court affirms the decision of the health plan.

According to Plaintiff's Complaint, in the Spring of 2010, Plaintiff Jason Springer, a physician in Utah, accepted a physician position with the Cleveland Clinic in Ohio. Plaintiff was to begin his employment with the Cleveland Clinic on July 1, 2010. Plaintiff enrolled himself, his wife and his son, J.S., in the Cleveland Clinic's health plan. Under the terms of

the Plan, it reads "as along as you have enrolled in the health plan within 31 days of your start date, your coverage is effective on the first day you actively start to work." (AR 15-1, pg. CCEHP 000011).[1] Thus, according to Plaintiff, his family were participant/beneficiaries under the Plan on July 1, 2010.

J.S. suffers from a number of serious health conditions that require round-the-clock healthcare. When Plaintiff accepted the Cleveland Clinic position, he arranged to have J.S transported via air ambulance to the Cleveland Clinic. J.S.'s primary care physician signed a Medical Letter of Necessity explaining the need for such transport services. Plaintiff's choice of air ambulance service, Angel Jet Services, LLC ("Angel Jet"), attempted to obtain precertification from Defendant for the transport from Defendant's Plan Administrator Antares Management Solutions, Inc. ("Antares") but Antares was unable to verify Plaintiff's family's enrollment at the time service was provided.

On July 7, 2010, J.S. was transported via air ambulance to Cleveland. Shortly thereafter, Angel Jet submitted a bill to Antares for $340,100 for J.S.'s transport. On August 31, 2010, an Antares representative informed Angel Jet the claim was approved. However, on September 2, 2010, the claim was subsequently denied for failure to obtain precertification.

Defendant provides its own air ambulance service via a third party carrier. Based on this relationship, the Plan offers members a steep discount on air ambulance services. On

---

[1] The parties filed the Administrative Record in a previously filed, related action captioned *Angel Jet Services, LLC. v. Cleveland Clinic Employee Health Plan Total Care*, 1:12CV298. Rather than refile the Administrative Record the parties asked to the Court if it would rely on the previously filed Administrative Record rather than require them to refile the entire record. The Court approves the request and refers to the record filed in the *Angel Jet* case.

January 27, 2011, Defendant issued Angel Jet a check for 10 percent of the billed charges. According to Defendant, this payment reflected the amount the Plan's exclusive air transport service would have charged for transporting J.S.

Having exhausted all administrative appeals of the denial of the benefits owed under the Plan, Plaintiff appeals the denial of the full amount of his Plan benefits.

According to Defendant, Plaintiff lacks constitutional standing to assert his ERISA claim because he does not allege that Angel Jet has sought to recover its unreimbursed fees from Plaintiff. Without this allegation, Defendant contends Plaintiff has failed to allege an injury arising from the Plan's 10 percent payment. Furthermore, the same issues that formed the central dispute in *Angel Jet* apply here -i.e.- whether it was arbitrary and capricious of the Plan to deny coverage for non-emergency medical transport of J. S. when Plaintiff failed to obtain preauthorization. Because the transport of J. S. was not an emergency situation, there was no necessity on the part of Plaintiff to transport J. S. via air ambulance without first obtaining preauthorization.

**<u>Standard of Review</u>**

The first issue the Court must address is whether the Plan confers upon the Plan Administrator the discretion to determine eligibility and construe the terms of the Plan. In determining the appropriate standard of review, the United States Supreme Court held the "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956–57, 103 L. Ed. 2d 80 (1989)

The Court applies the arbitrary and capricious standard of review where a policy cloaks the plan administrator with the discretionary authority to determine eligibility and construe the terms of a policy. *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F. 3d 440 (6th Cir. 2009) (Citing *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989)). The arbitrary and capricious standard is the most deferential form of judicial review. *Admin. Comm. of Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson*, 164 F. 3d 981, 989 (6th Cir. 1999). The administrator's decision should be upheld if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Glenn v. Metro. Life Ins. Co.,* 461 F. 3d 660, 666 (6th Cir. 2006), *aff'd,* 128 S. Ct. 2343 (2008). In other words, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 693 (6th Cir.1989). "In applying the arbitrary and capricious standard in ERISA actions, a court is limited to reviewing the evidence contained within the administrative record." *Kouns v. Hartford Life & Acc. Ins. Co*, 780 F. Supp. 2d 578, 584–85 (N.D. Ohio 2011) citing *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 615 (6th Cir.1998). "A court should utilize the arbitrary and capricious standard even when a conflict of interest exists." *Kouns,* 780 F.Supp.2d at 584 *citing Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008). "The Supreme Court has held that a conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefit claims, even where the administrator is an insurance company and not the beneficiary's employer." *Kouns,* 780 F.Supp.2d at 584 citing *Glenn,* 554 U.S. at 111, 128 S.Ct. 2343. Courts will weigh a potential conflict of interest as a factor in determining whether the decision to deny benefits was

4

arbitrary and capricious. *Glenn,* 554 U.S. at 117, 128 S.Ct. 2343; *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. A possible conflict of interest due to the administrator's dual role is "but one factor among many that a reviewing judge must take into account." *Glenn*, 128 S. Ct. at 2351.

Here, the Cleveland Clinic Employee Health Plan Total Care expressly identifies Antares as its third party administrator. The Plan reads:

> Antares Management Solutions (Antares) functions as the Third-Party Administrator (TPA) for Cleveland Clinic Employee Health Plan (EHP) Total Care. In this role, they are responsible for:
>
> 1. Member eligibility verification
>
> 2. Benefit coverage determinations
>
> 3. Processing claims and claims appeals
>
> 4. Issuing statements of Explanation of Benefits (EOB)
>
> 5. Coordinating benefits if a member is covered by more than one health plan
>
> 6. Subrogation processing
>
> 7. Workers' Compensation coordination

(AR 15-1 pg. CCEHP 000017).

The Plan confers upon Antares the discretion to construe the terms of the Plan and determine eligibility. The Plan provides an appeals process wherein a beneficiary may appeal an adverse decision to the Plan Advisory Committee for a final and binding determination. (See AR 15-1 pg. CCEHP 000068)

> **Role of Cleveland Clinic Employee Health Plan Total Care Advisory Committee.**
> If it is determined that the appeal cannot be resolved through the TPA, Cleveland Clinic Employee Health Plan (EHP) Total Care, or Compensation/

5

Benefit review process, the case will be forwarded to the Health Plan Advisory Committee (HPAC) for Third Level Appeal Review. Physician members of the Cleveland Clinic Employee Health Plan Total Care Advisory Committee must hold a current, active, unrestricted license to practice and be Board Certified. Committee members include EHP Total Care Chief Medical Officer, Senior Director, Legal Counsel, Senior Director Compensation and Benefits, Cleveland Clinic Medical Director, Director of Health and Welfare Benefits, Director of Retirement/Voluntary Benefit Plans, Director, EHP Medical Management, EHP Total Care Pharmacy Director, and Behavioral Health representatives. Appeal decisions made by Cleveland Clinic Employee Health Plan Total Care or the HPAC are final and binding. If you are dissatisfied with an appeal decision, refer to Section Six, page 65, "A Statement of Your Rights Under ERISA."

Thus, the Plan confers upon Antares the discretion to determine eligibility and construe the terms of the Plan, then, on appeal, the Plan Advisory Committee has final authority over all eligibility issues.[2] Therefore, the Court sees no reason to depart from its prior holding in *Angel Jet* that the Plan Administrator has discretionary authority and that the arbitrary and capricious standard applies in spite of the conflicting representations to the

---

[2] The Court has been hampered by the conflicting statements in the pleadings and the record as to the identity of the Plan Administrator. Plaintiff's Complaint alleges "the Plan is administered by Antares Management Solutions, Inc. ("Antares"). Both the Cleveland Clinic and Antares are Plan Administrators and Fiduciaries." (Complaint at para.6). Defendant's Answer states "Defendant admits Antares Management Solutions, Inc. "Antares" is a third party administrator for the CCF Plan. Defendant denies the remaining allegations in paragraph 6 of Plaintiff's Complaint." (Answer at para. 6). In its Response Brief, Defendant states "Cleveland Clinic is the administrator of the Plan." (Defendant Response Brief ECF # 11 pg 3). In a letter dated October 11, 2011, from Ann Zellmer to Amanda Crutchfield, Zellmer writes "I write to you as counsel for the Cleveland Clinic Foundation ("CCF"), in its capacity as Plan Administrator of the Cleveland Clinic Employee Health Care Plan." (AR 17-28). These representations stand in stark contrast to the plain language of the Plan which reads "Cleveland Clinic Employee Health Plan (EHP) Total Care is partnered with Antares Management Solutions (Antares) to administer your health plan benefits accurately and efficiently. Antares provides claims processing for all members who receive healthcare services." (AR 15-1 pg CCEHP000008). The parties do not point the Court to any provision in the Plan document itself describing the Cleveland Clinic Foundation as the Plan Administrator.

contrary. (See footnote 2). The Court must consider the provisions expressly described in the Plan itself to determine the identity of the Plan Administrator and the discretionary authority granted that Administrator. As described above, the Plan clearly appoints Antares as administrator with discretionary authority to determine eligibillity. Final authority on appeal resides with the Health Plan Advisory Committee. In a case wherein the subject Plan was similarly structured with a Third Party Administrator and a Plan Administrative Review appeals panel the Sixth Circuit in *University Hospitals of Cleveland v. Emerson Electric Co.* 202 F.3d 839 (6th Cir. 2000) applied the arbitrary and capricious standard. This Court does the same, albeit with a more discerning eye due to Defendant's admission in the previously filed *Angel Jet* case that the Plan operates under a conflict of interest (*Angel Jet*, Case No. 12-298 at ECF # 19 pg. 2) ("Defendant readily stipulates that it, like most ERISA plans, operates under a structural conflict of interest, because it both determines claim eligibility and pays benefits."). However, this conflict of interest does not change the standard of review. See *Zenadocchio v. BAE Sys. Unfunded Welfare Ben. Plan,* 936 F. Supp. 2d 868, 885 (S.D. Ohio 2013) ("The conflict of interest does not alter the standard of review, but is weighed as but one factor in determining whether there is an abuse of discretion.").

However, even were the Court to apply the *de novo* standard of review the outcome would not change because issues of standing and construction of the unambiguous Plan terms ultimately decide this case.

Under ERISA, 29 U.S.C. § 1132, the following persons may bring a civil action.

(a) **Persons empowered to bring a civil action**
A civil action may be brought--
**(1)** by a participant or beneficiary--
**(A)** for the relief provided for in subsection (c) of this section, or

> **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

## **Standing**

There is no dispute Plaintiff is a plan participant. Defendant challenges Plaintiff's constitutional standing to assert an ERISA claim because the administrative record demonstrates J. S. received air ambulance service, Defendant paid the usual and customary amount to Angel Jet and Plaintiff has not alleged he had to pay or is liable for the unpaid balance.

Plaintiff contends the Complaint clearly alleges Plaintiff was denied benefits under the Plan. (Complaint para. 37). According to Plaintiff, Angel Jet charged Plaintiff $340,100 which he directed to be processed through the Plan. The Plan failed to pay the full amount but instead issued payment of only 10 percent of the charged costs. This was done in spite of the plain language of the Plan wherein it expressly states it will pay "100% for transportation- including professional ambulance, air ambulance, or regularly scheduled airline..." (AR 15-1 pg. CCEHP 000035).

"Article III limits the judicial power of the United States ... and 'Article III standing ... enforces the Constitution's case-or-controversy requirement.' " *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597–98, (2007) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). In order to assert constitutional standing a plaintiff must have "'such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quoting *Baker v. Carr*, 369

U.S. 186, 204 (1962)).  Plaintiff bears the burden of establishing standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

In this administrative appeal, there is no allegation in the Complaint nor is there any evidence in the administrative record demonstrating that Plaintiff suffered an actual injury. Actual injury is a mandatory prerequisite for a claimant seeking redress for ERISA violations in order to establish constitutional standing.  In a recent case directly addressing this issue, the Sixth Circuit in *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581–82 (6th Cir. 2016), analyzed constitutional standing in the context of an ERISA action.  The Sixth Circuit held that "with respect to claims arising under ERISA, plaintiffs are not absolved from showing that the elements of Article III are met." *Id* citing *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606–07 (6th Cir. 2007).  "To satisfy Article III's standing requirements, a plaintiff must show: '(1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Soehnlen, 844 F.3d at 581 quoting Loren*, 505 F.3d at 606–07 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81(2000)). " As the Supreme Court recently affirmed in *Spokeo, Inc. v. Robins*, an injury-in-fact contains the two distinct elements of particularization and concreteness." *Soehnlen,* 844 F.3d at 581 citing ––– U.S. ––––, 136 S.Ct. 1540, 1548–50, 194 L.Ed.2d 635 (2016).  "For an injury to be particularized, 'it must affect the plaintiff in a personal and individual way.'" *Soehnlen* at 581-82 *quoting Spokeo* at 1548; *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S.

9

464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury").

The Sixth Circuit in *Soehnlen* continued:

> While "particularization is necessary to establish injury in fact[,] ... it is not sufficient." *Spokeo*, 136 S.Ct. at 1548. A plaintiff must also show that he suffered a concrete injury, defined as a "de facto" injury, meaning that the injury "must actually exist." *Id.*
>
> Pointing specifically to *Spokeo*, Plaintiffs contend that the Supreme Court has radically altered the landscape for pleading injury-in-fact. Consequently, they believe that by merely alleging a violation of ERISA rights, they satisfy their obligation under Article III. We disagree on both points. While we recognize that the Supreme Court acknowledged that non-tangible injuries, including violations of statutory rights, may satisfy the constitutional showing of an injury-in-fact, we also take the Court at its word when it cautions that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Therefore, even if we assume the injury is sufficiently particularized, Plaintiffs must still show that the deprivation of a right created by statute is accompanied by "some concrete interest that is affected by the deprivation." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)). A "concrete" intangible injury based on a statutory violation must constitute a "risk of real harm" to the plaintiff. *Id.*

*Id* at 582.

In the case at bar, there is nothing indicating Plaintiff has or will suffer a concrete injury. In his Reply, Plaintiff contends Angel Jet charged him $340,100 "which he directed to be processed through his health insurance with the Plan." (ECF # 12 pg.1). He directs the Court to ECF 15, Exhibit 15, pg 000111 in the record as support for this statement. Exhibit 15 is not a bill from Angel Jet to Plaintiff, rather, it is a customer service log entry dated August 31, 2010, from Angel Jet to Antares inquiring about the Angel Jet claim status. Under

the status notes it reads "status. Advised that this was processed 8/26/10. We will be paying $340,100.00 no check number yet." It is entirely silent on any charges from Angel Jet to Plaintiff. Plaintiff does not point the Court to any evidence in the administrative record demonstrating that Plaintiff is liable for the balance of the Angel Jet claim nor has Plaintiff alleged that Angel Jet has sought reimbursement from him. In fact, his Reply indicates that Angel Jet has not sought reimbursement. "At that point, the only thing that was stopping Angel from seeking to collect from Dr. Springer personally was an agreement assigning Dr. Springer's rights to pursue the Plan to Angel." (Reply at pg.2). It was this alleged assignment that Angel Jet relied on in *Angel Jet* when asserting its claim for payment against the Plan as the authorized representative of Plaintiff. The Court determined that assignment conferred upon Angel Jet no rights under the Plan because it only assigned Plaintiff's spouse's rights to an unrelated Blue Cross plan.

Here, it is undisputed that J. S. was transported by air ambulance. It is also undisputed that the Plan reimbursed Angel Jet $34,451.75 based on what the comparable air ambulance cost would have been had Plaintiff used the Plan's air ambulance provider. There is no dispute that Defendant issued the above payment to Angel Jet. There is nothing in the record demonstrating that Angel Jet rejected the payment.

In light of the above, the Court finds Plaintiff has failed to establish constitutional standing as he has not and cannot show a concrete injury. He received air ambulance service. Defendant Plan paid what they determined was covered under the Plan. Angel Jet accepted that payment and has not sought reimbursement from Plaintiff. Therefore, the Court finds Plaintiff's appeal fails for lack of constitutional standing.

**The Terms of the Plan**

Even assuming arguendo Plaintiff could establish standing, the Plan's refusal to pay 100% of Angel Jet's billed fees was not arbitrary and capricious. In the administrative record the evidence shows Plaintiff became a Plan participant on July 1, 2010. J. S. was transported via air ambulance on July 7, 2010. Plaintiff's had been planning to transport Plaintiff's son for more than thirty days prior to the actual transport. This is evidenced by the Medical Letter of Necessity dated June 3, 2010, which describes how the family plans on moving to Ohio. (AR 15-2). This is further evidenced by Plaintiff's wife's Appointment of Authorized Representative letter signed June 8, 2010, subrogating her rights under her health plan to Angel Jet. (AR 15-3). This timeline is important because the question of whether J.S.'s air transportation was an emergency situation plays a significant role in the benefits determination.

Plaintiff contends the Plan authorizes 100% coverage for air transportation. Plaintiff cites to page 28 of the Plan wherein it reads:

> **Emergency Transportation**
>
> Emergency transport to an emergency room is always covered. However, if a member becomes sick or injured while away from the Cleveland area and must be admitted to a hospital anywhere in the United States or Canada, EHP Total Care will pay 100% for transportation-- including professional ambulance, air ambulance, or regularly scheduled airline (limit: one trip during any one accident or illness) -- if transported from such other hospital to the nearest Cleveland Clinic Hospital (Florida or Ohio) for treatment. ***This type of transportation to a Cleveland Clinic Hospital must meet the precertification process of the EHP Medical Management Department.*** (Emphasis added).

(AR 15-1 pg. CCEHP 000035).

12

There is no question that J. S required medical air ambulance transport, however, there is nothing indicating it was an emergency situation. Rather, the record indicates that the air transport was planned at least one month in advance of Plaintiff's first day of work with the Cleveland Clinic and coincided with Plaintiff's move to Cleveland. All other transportation requires precertification. There is no dispute Plaintiff never obtained precertification. The record further notes that Angel Jet's initial contact with the Plan occurred on July 2, 2010, only one day after Plaintiff enrolled. The record reflects Angel Jet's inquiry into Plaintiff's eligibility and benefits. It does not reflect an attempt to obtain preauthorization for the air ambulance services prior to the date of the flight.

The Plan makes it clear that coverage starts the day of enrollment subject to certain conditions, however, it clearly states it may take up to 15 business days to process the paperwork (AR 15-1 pg. CCEPH000011). The record does not reflect that Angel Jet attempted to obtain or otherwise requested a copy of the Plan in order to determine coverage prior to its providing air ambulance service to J. S. There is no dispute Angel Jet did not receive preauthorization to transport J.S. to Cleveland from the Plan and there is nothing in the record indicating any reliance by Angel Jet prior July 7, 2010, on any Plan provision upon which it could reasonably have presumed coverage for its services. Instead, the Plan expressly excludes coverage where precertification is required and is not obtained even if it applies to a covered benefit. (AR 15 pg. CCEHP 000062).

Furthermore, although Plaintiff argues preauthorization was an impossibility given that the Plan was unable to verify Plaintiff's status as a member prior to July 7, 2010, it does not explain why J.S. had to be transported via air ambulance on July 7, 2010.

13

Having considered all the relevant provisions of the Plan, the determination to pay only $34,451.75 was not arbitrary or capricious in that the express, unambiguous Plan provisions required precertification and none was obtained. Therefore, the Plan was well within its authority to preclude coverage absent precertification. Furthermore, the record does not evidence any attempt by Angel Jet to obtain preauthorization, nor does it support a finding that the transportation of J.S. on July 7, 2010 was an emergency.

From the Antares original Explanation of Benefits (AR 15-18) to the denial of benefits by the EHP on October 11, 2011, Defendant has consistently denied the full benefit for failure to obtain preauthorization for the flight as required under the Plan. The Plan authorized payment based on the amount its own air ambulance provider would have charged for the same transportation. (AR 17-31).

Therefore, for the foregoing reasons, the Plan's denial of benefits to Angel Jet and Plaintiff was not arbitrary or capricious as the Plan required precertification which was not sought nor obtained for a non-emergency transport.

**<u>Failure to Provide Plan Documents</u>**

Count II of Plaintiff's Complaint alleges the Plan failed to produce Plan documents within thirty days as required by ERISA. Angel Jet first requested Plan documents in a letter dated November 3, 2010. Angel Jet further requested "any documents, contracts, guidelines, or procedures that establish rate schedules for the Cleveland Clinic-owned air transport service" on February 25, 2011. According to Defendant, the applicable statute of limitation period for such an action is one year. Plaintiff did not bring this claim until January of 2015, almost four years after its latest request. Defendant further asserts that under 29 U.S.C.

§1132(c)(1)(B) penalties may be imposed by a Court for the untimely disclosure of documents as required by 29 U.S.C. §1024, not 29 CFR 2560.503-1 as Plaintiff alleges. Furthermore, the statute only permits the imposition of such penalties against Plan Administrators, not Plans. Since Plaintiff has failed to name the Cleveland Clinic as a Defendant, Defendant contends the Court cannot impose such penalties.

Plaintiff, on Reply, offers no defense to these arguments but instead asks the Court to permit it to amend its Complaint to include the Cleveland Clinic as a Defendant.

The Court finds that the applicable statute of limitations for an action for statutory penalties under 29 USC § 1132(c)(1)(B) is one year. See *Kumar v. Higgins,* 91 F. Supp.2d 1119, 1124 (N.D. Ohio 2000). Thus, Plaintiff's action is well outside the applicable limitation period and his claim is denied. Because the limitation period forecloses this claim regardless of the whom Plaintiff named as Defendant, the Court denies Plaintiff's request to amend his Complaint to name the Cleveland Clinic.

Therefore, for the foregoing reasons, the Court affirms the decision of the Plan Administrator and grants judgment for Defendant.

IT IS SO ORDERED.

                                                s/ Christopher A. Boyko
                                                CHRISTOPHER A. BOYKO
                                                United States District Judge

Dated: October 26, 2017